# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**JEAN-LOUIS ALCIUS ET AL**          **CASE NO.  6:21-CV-03428**

**VERSUS**                           **MAGISTRATE JUDGE CAROL B. WHITEHURST**

**THEUS AUDILOU ET AL**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

By consent of the parties pursuant to 28 U.S.C. 636(c), this matter came before the Court for trial on the merits on November 5, 2025.  The Court has jurisdiction pursuant to 28 U.S.C. §1332. Plaintiffs, Jean-Louis Alcius and Perico Alcius, are citizens of Haiti (Rec. Doc. 1). Defendant, Theus Audilou,[1] is a citizen of Florida. (Rec. Doc. 1, ¶3; Rec. Doc. 6, ¶3). Defendant, Central Shores, LLC, is a Florida limited liability company, whose sole member is Audilou.[2] (Rec. Doc. 1, ¶4; Rec. Doc. 6, ¶4). Thus, complete diversity exists. Plaintiffs seek in excess of $75,000. (Rec. Doc. 1, ¶24; 26; 32; 36).

Having carefully considered the testimony of the witnesses, the exhibits entered into evidence at trial, the record, and the applicable law, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal

---

[1] "Audilou" is at times misspelled in the record as "Adilou" and "Aldilou."

[2] Audilou testified at trial that he is the sole member of Central Shores, LLC, a now defunct company.

Rules of Civil Procedure. To the extent any conclusion of law is deemed to be a finding of fact, it is adopted as such.  Likewise, to the extent any finding of fact is deemed to be a conclusion of law, it is adopted as such.

### FINDINGS OF FACT

After consideration of the parties' stipulations and the evidence and testimony at trial, the Court makes the following findings of fact:

1. Jean-Louis Alcius does not speak English and testified at trial through a Creole interpreter. Theus Audilou speaks heavily accented English and apparently Creole, as he was able to communicate with Ms. Alcius.

2. In 2020, Plaintiffs, Ms. Alcius and her husband, Perico Alcius, were in the business of transporting Haitian goods between Cape Haitian and the Provencial Islands.

3. Sometime before February 2020, Ms. Alcius's friend, Nadia, referred her to Theus Audilou to purchase a boat to replace the motorized barge they had been using in their transport business.

4. Ms. Alcius began communicating with Mr. Audilou in February 2020 through WhatsApp text messages and calls. Mr. Audilou was not a licensed vessel broker, but he agreed to assist her in buying a boat.

5. Ms. Alcius expected to purchase a boat in perfect condition, equipped with two Caterpillar engines (which function better in the Caribbean, where her

boat would be working) and two generators, and which could be placed immediately into service. She also desired to have the boat delivered to her in Cape Haitian, where Plaintiffs live.

6. In September 2020, Mr. Audilou shared with Ms. Alcius a photograph of the M/V Recovery (Rec. Doc. 62-2) and what she believed to be a copy of the vessel's specifications, which showed that the boat had two Caterpillar engines. (Rec. Doc. 62-2). He later sent her other pictures of what he claimed to be the vessel. Mr. Audilou recommended this vessel to fit her needs and told her the price. Ms. Alcius trusted him and relied on his recommendation.[3]

7. The M/V Recovery was one of two vessels offered for sale by American Pollution Control Corporation (referred to as "Ampol" in some of the evidence). The M/V Recovery (Official No. 500892) is an offshore supply vessel powered by two GM-12V71 engines. (Stipulated fact; Rec. Doc. 62-9). It was built in 1965 and was generally in poor condition. (Rec. Doc. 62-9; 62-10). It was unfit to sail to Haiti at the time of the sale.

8. The M/V Responder, the M/V Recovery's sister vessel, is also an offshore supply vessel, but it is powered by two Caterpillar engines. (Rec. Doc. 62-11). American Pollution Control offered both vessels for sale through Ocean

---

[3]    Mr. Audilou testified that he told Ms. Alcius that the boat had two GM engines which were working fine. The Court finds Ms. Alcius's testimony was more credible.

Marine Brokerage Services. The open listings, which allowed sellers and other brokers to also sell listed boats, were available to Mr. Audilou.

9.  Ms. Alcius agreed to pay $84,500 for the M/V Recovery, based on her understanding from Mr. Audilou's representations that the vessel was in good condition, had Caterpillar engines, and would fit her needs. She understood that the vessel would be delivered to her in Haiti at additional costs and that Mr. Audilou would provide a bill for transport once the vessel was delivered.[4]

10. On October 10, 2020, Ms. Alcius wired Mr. Audilou $10,000.00 US. On October 16, 2020, she wired him $30,000.00 US. On October 24, 2020, Ms. Alcius wired Mr. Audilou $30,000.00 US. (Stipulated facts; Rec. Doc. 62-4).

11. On October 26, 2020, Central Shores, LLC, of which Mr. Audilou is the sole member, purchased the M/V Recovery from American Pollution Control Corporation for $60,000. (Stipulated fact; Rec. Doc. 62-13). Mr. Audilou arranged to have the vessel transported to a shipyard in Morgan City for $6,000 and then to undergo dry dock repairs (sandblasting, primer, etc.) for $13,600.

---

[4]    Mr. Audilou testified that he told Ms. Alcius the vessel was not fit to sail to Haiti and would need to be repaired at the dry dock before it could make the trip and that she told him to proceed with the purchase anyway. He also testified that he advised Ms. Alcius that it was her responsibility to arrange for transportation. The Court finds Ms. Alcius's testimony regarding Mr. Audilou's representations regarding the condition of the vessel more credible. Regarding transport of the vessel to Haiti, the Court finds the parties had a mutual misunderstanding.

12. Through the end of 2020 and into early 2021, Mr. Alcius and Mr. Audilou continued communicating, but the vessel was never delivered.

13. In February 2021, Mr. Audilou presented a contract to Ms. Alcius. The contract identified Central Shores, LLC as the seller, the purchase price as $117,042.00, and stated that the buyer (identified as Perico Alcius) had paid a non-refundable deposit of $70,000. Industry standard calls for a 10% refundable deposit. The contract also stated that the vessel was sold "as is" and "where is," but it did not include a warranty of title, which industry standard generally requires. (Rec. Doc. 62-5). Ms. Alcius could not understand the contents of the contract (written in English) and had not agreed to the terms in the contract. She did not sign it.

14. In May 2021, Ms. Alcius and a friend traveled to Morgan City, Louisiana where the vessel was moored, but they were unable to board the vessel. Mr. Audilou advised Ms. Alcius that she must pay an additional $14,500 to see the vessel. Ms. Alcius understood that the additional funds were for delivery of the vessel. Mr. Audilou testified that the $14,500 was to cover expenses for delivery to the Morgan City shipyard and for repair and dockage fees. Mr. Audilou provided no documentary evidence of the nature of the $14,500 expense.

15. On May 27, 2021, Ms. Alcius deposited $14,500.00 into Mr. Audilou's account at TD Bank. (Stipulated fact; Rec. Doc. 62-6).

16. After sending Mr. Audilou $14,500, Ms. Alcius was still not allowed to board the vessel, because additional dockage fees of approximately $20,000 remained unpaid. However, Ms. Alcius's friend, who knew Mr. Audilou, pointed out what he believed to be the M/V Recovery at the shipyard. The friend was able to board the boat he believed to be the M/V Recovery and found it did not have Caterpillar engines. They were never able to confirm whether that vessel was in fact the M/V Recovery.

17. After finding the vessel to be in poor condition and unlike the vessel Mr. Audilou had marketed to her, on July 1, 2021, Ms. Alcius sent a formal demand for refund of the $84,500 she had paid for the vessel. (Rec. Doc. 62-8). Mr. Audilou did not refund the money. The vessel remains moored at a shipyard in Morgan City and continues to incur daily dockage fees.

18. Because of the financial hardship following the failed transaction, Ms. Alcius mortgaged her house in July 2021 in order to continue running her business. She rented a barge for a total of $10,000 per month from July 2021 to March 2023. She has not been in the same business since then.

## CONCLUSIONS OF LAW

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state." *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510 (5th Cir. 2007). Thus, Louisiana substantive law applies to Plaintiffs' claims under Louisiana Unfair Trade Practices Act (LUTPA), for breach of contract, for recission of contract/unjust enrichment, and alternatively for negligence.

### I.  Contract Claims

The Court interprets Plaintiffs' primary claims as contract-based claims. They first assert a breach of contract claim, seeking a judgment obligating Defendants to deliver the vessel. (Rec. Doc. 1, ¶27-30). Alternatively, they seek recission of the contract. (¶31-33).  Louisiana contract law is governed by the Louisiana Civil Code.

> In Louisiana, a breach-of-contract claim has three essential elements: (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee. The first two elements of a breach-of-contract claim, obligation and breach, involve issues of both contractual interpretation as a matter of law, as well as questions of fact regarding whether the actions of the parties actually constituted the alleged breach under the applicable contractual terms. The third element, damages, is a question of fact.

*IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (cleaned up).

A valid contract of sale requires three things: (1) the thing, (2) the price (in either a sum certain or to be determined by a method agreed to the parties), and (3) the consent of the parties. *John W. Stone Oil Distrib., L.L.C. v. River Oaks*

*Contractors & Devs., Inc.,* 07-1001 (La. App. 5 Cir. 5/27/08), 986 So. 2d 103, 109, *writ denied,* 2008-1397 (La. 9/26/08), 992 So. 2d 992, citing La. C.C. art. 2439 and 2464.

Error may vitiate consent to a contract. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. La. C.C. art. 1950.

The Louisiana Supreme Court provided the following helpful analysis for determining the remedy in the case of error.

> [E]rror, which vitiates consent, can manifest itself in two ways: mutually, *i.e.,* both parties are mistaken, or unilaterally, *i.e.,* only one party is mistaken. However, in both situations, the error for which relief may be granted (1) must affect the cause of the obligation, and (2) the other party must know or should have known the matter affected by error was the cause of the obligation for the party in error; that is, that it was the reason he consented to bind himself. In other words, both parties can individually be mistaken, in which case both parties are clearly aware the matter in error was the cause of their mutual obligations, thus vitiating the consent of both parties; or one party can be mistaken and that mistake will vitiate consent if the other party knows or should have known.

In a civilian context, the granting of relief differs depending upon whether the error is bilateral or unilateral:

> The granting of relief for error presents no problem when both parties are in error, that is, when the error is bilateral. When that is the case the contract may be rescinded, as when the parties misunderstood each other at the time of contracting or when they were misinformed because of the error of a third party As an alternative, the instrument that contains the contract may be reformed in order to reflect the true intent of the parties.

> When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error. Louisiana courts have often refused relief for unilateral error for this reason. Yet, expanding the rule stated in C.C. Art. 1826 (1870), they have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract. As expressed in *Nugent v. Stanley,* 336 So.2d 1058, 1063 (La.App. 3rd Cir.1976): "The jurisprudence establishes that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause." …

As noted above, under our jurisprudence, relief is provided through either reformation or rescission. This is so because the error for which the relief is granted renders the contract merely a relative nullity, which can be confirmed, reformed, or deemed never to have existed, *i.e.,* null, by the court. In granting such relief, we are guided by the understanding that it is not the province of the court to alter by construction or to make new contracts for the parties. The duty of the court is confined to the interpretation of the agreements the parties have made for themselves, and, in the absence of any ground for denying enforcement, to give effect to the agreements as made.

*Peironnet v. Matador Res. Co.,* 2012-2292 (La. 6/28/13), 144 So. 3d 791, 807–08 (cleaned up), quoting La. Civ.Code art.1949, Revision Comments—1984, cmt. (d) (West 2012).

Courts interpreting Louisiana law often rescind contracts based on error as to cause. *St. Charles Ventures, L.L.C. v. Albertsons, Inc.,* 265 F. Supp. 2d 682, 689 (E.D. La. 2003), citing *Gisclair v. Matmoor, Inc.,* 537 So.2d 876 (La.App. 5th Cir.1989) (rescinding sale based on buyer's error that property could be used commercially); *Jefferson Truck Equip. Co. v. Guarisco Motor Co.,* 250 so.2d 211 (La.App. 1st Cir.1971) (error allowed for the rescission of the sale because the buyer had accepted the seller's bid for the crane under the mistaken belief that its grade capacity met the purchaser's requirements, of which the seller had knowledge); *Nugent v. Stanley,* 336 So.2d 1058 (La.App. 3d Cir.1976) (sale rescinded where the purchasers of an on-going business believed they bought a business with a good credit reputation and $12,000 to $15,000 worth of executory contracts for the installation of carpet, though in reality, the company's credit rating was poor, and the value and income of the business had been grossly exaggerated to the purchasers). The facts of this case warrant the same result.

Ms. Alcius intended to buy a vessel with two Caterpillar engines, which perform better in the Caribbean, where the vessel would be used, and which could have been put to immediate use. Mr. Audilou represented that the M/V Recovery

was suitable for her needs and was equipped with Caterpillar engines; however, the vessel was equipped with ill-suited GM engines and was in poor condition, unable even to be sailed to Haiti at the time. Accordingly, the Court finds Ms. Alcius's error vitiates her consent to the sale. Recission is warranted.

## II. LUTPA

Plaintiffs also assert a claim under the Louisiana Unfair Trade Practices Act. Louisiana Revised Statute 51:1405 broadly declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. Its purpose is "to protect consumers and to foster competition." *Quality Env't Processes, Inc. v. I.P. Petroleum Co.,* 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025. "Because of the broad sweep of [the statute's] language, Louisiana courts determine what is a LUTPA violation on a case-by-case basis." *Id.*

> This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. The range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.

*Id.* (cleaned up).

As the Fifth Circuit has emphasized, LUTPA claims cannot rest upon permissible business practices or simple breaches of contract:

> LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.

*Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993) (citations omitted).

Plaintiffs characterize Mr. Audilou's following actions as unfair and deceptive: 1) representing that the vessel was powered by Caterpillar engines; 2) recharacterizing Plaintiffs' initial $70,000 payment as a non-refundable deposit; and 3) inducing Plaintiffs to pay an additional $14,500 in order to board and inspect the vessel.

The evidence shows that Mr. Audilou sent to Ms. Alcius specifications identifying Caterpillar engines; however, these specifications were for the M/V Recovery's sister vessel, the M/V Responder. Given the distinct similarities of the vessels' listings, the parties' informal dealings, and the lack of other evidence that Mr. Audilou intended to mislead Ms. Alcius, the Court finds Mr. Audilou's misrepresentation of the M/V Recovery's engines to be insufficient to support a LUTPA violation.

Similarly, the Court finds that Mr. Audilou's purported characterization of Ms. Alcius's initial $70,000 payment as a non-refundable deposit is insufficient.

Rather, the evidence shows that both Mr. Audilou and Ms. Alcius were unsophisticated parties attempting to transact a vessel perhaps better suited for the scrapyard. While Ms. Alcius relied on Mr. Audilou's purported expertise in purchasing a vessel for her needs, the Court questions whether her reliance was reasonable, given Mr. Audilou's lack of a broker license and the informality with which he handled the transaction. Nevertheless, the Court finds that Mr. Audilou was in a far better position to prevent the circumstances giving rise to this suit, but his actions do not rise to the level of egregious

Finally, regarding Ms. Alcius's $14,500 payment, the Court finds the circumstances likewise do not support a LUTPA claim. Rather, the evidence supports that these unsophisticated parties suffered miscommunications and misunderstandings resulting in the lose-lose situation presented to the Court for resolution.

### III.   **Negligence and Unjust Enrichment**

Plaintiffs assert an alternative claim for negligence. "It is the nature of the duty breached that should determine whether the action is in tort or in contract." *Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993). The Court finds Plaintiffs' claims are contract-based, such that their alternative negligence claim will be dismissed.

Plaintiffs also assert a claim based on unjust enrichment. Louisiana unjust enrichment claims are governed by La. C.C. art. 2298:

A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The Louisiana Supreme Court has instructed that recovery for unjust enrichment is unavailable where other remedies exist:

Pursuant to La. Civ.Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and shall not be available if the law provides another remedy. The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided.

*Walters v. MedSouth Record Mgmt., LLC*, 2010-0353 (La. 6/4/10), 38 So. 3d 243, 244 (internal citations and quotations omitted).

As discussed above, Plaintiffs are entitled to recovery on contract principles. Thus, they cannot recover on a theory of unjust enrichment.

## IV.    **Damages**

The evidence and law support a finding that Plaintiffs are entitled to recission of the contract of sale for the M/V Recovery. "Rescission requires the seller to return the purchase price and the buyer to return the thing purchased, thus placing the parties in the positions they held before the sale." *Lindy Invs. v. Shakertown Corp.,* 209 F.3d 802, 806 (5th Cir. 2000). As Plaintiffs never acquired possession of the vessel, a return of their purchase price is the only remaining obligation.

Ms. Alcius testified that because of the failed transaction, she was forced to rent a barge at a cost of $10,000 per month, for eighteen months, which she funded

by mortgaging her house. But for her lack of possession of the M/V Recovery and her $84,500 in funds, she would not have had to lease another boat. The Court finds she sustained damages due to the failed sale in the amount of $180,000. Defendants presented no evidence pertaining to mitigation.

State law governs the award of prejudgment interest in diversity cases. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010). "Louisiana's presumption in breach-of-contract cases provides that prejudgment interest runs from the date the breached occurred, which generally precedes judicial demand, regardless of whether 'the precise amount of the damages [is then] liquidated or absolutely certain.'" *Franklin v. Regions Bank*, 125 F.4th 613, 633 (5th Cir. 2025), quoting *David Y. Martin, Jr., Inc. v. Heublein, Inc.*, 943 F. Supp. 637, 643 (E.D. La. 1996) (noting "[Louisiana] courts have established only that, in order for interest to run from the date of breach, damages must be ascertainable"). "[A] debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date." *Mini Togs Prods., Inc. v. Wallace,* 513 So. 2d 867, 873 (La. Ct. App.), *writ denied,* 515 So. 2d 447 (La. 1987), and *writ denied,* 515 So. 2d 451 (La. 1987). Plaintiffs formally placed Defendants on notice of default and demanded a refund on July 1,

2021 (Rec. Doc. 62-8), thereby commencing the running of prejudgment judicial interest.

Mr. Audilou is personally liable for return of Plaintiffs' purchase price of $84,500, damages, prejudgment interest, and post-judgment interest. Although Central Shores, LLC purchased the vessel from Ampol, Mr. Audilou presented no credible evidence that Plaintiffs contracted with Central Shores, LLC. Rather, the evidence shows that Plaintiffs arranged to purchase the vessel through Mr. Audilou in his individual capacity. Judgment pursuant to F.R.C.P. Rule 54 shall be entered accordingly.

THUS DONE in Chambers, Lafayette, Louisiana on this 4th day of December, 2025.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE